## Case No. 11,456.

### PRUSEUX et al. v. WELCH et al.

[2 West. Law Month. 209.]

Circuit Court, N. D. Ohio.    March Term, 1860.

LIMITATIONS—EXCEPTIONS—"PERSONS BEYOND THE SEAS"—EFFECT OF REPEAL—PERFECTED RIGHTS—LAND TITLES IN OHIO—ADVERSE POSSESSION.

1. The exemption in the act of limitations of the legislature of Ohio, passed the 25th of February, 1824 [Chase's St. 1402], of persons being within the age of twenty-one years, insane, feme covert, imprisoned, or without the United States or the territories thereof, at the time of the accruing of the right of action, and giving them, in an action to recover lands the 21 years allowed by that act, after the disability removed, was continued by the acts of 22nd February, 1830 [Id. 1654], and 18th February, 1831 [Id. 1768], up to the act of 28th February, 1846 [44 Laws Ohio, p. 78].

2. The act of 28th February, 1846, repeals so much of the laws then in force as saves the rights of persons being non-residents of this state, or "beyond seas," but defers the operation of the repeal, as to rights of action then already accrued, to the 4th of July, 1847. And the phrase, "persons beyond seas," is construed to mean persons who are not residents of the state of Ohio; and this limits the operation of the exception in favor of such parties to the date last mentioned.

3. A repealing act totally abrogates the law repealed, except as to such rights as became perfect under it.

4. An objection to the running of the statute of limitations, in an action for the recovery of land, founded upon the allegation that the possession of the defendant was obtained by fraud, can be made only by the party injured by the fraud.

5. The second section of the act of Ohio of the 22nd March, 1849 [47 St. 53], "to give additional security to land titles in this state," and abridging the statute of limitations to seven years after open and notorious possession, in actions brought for the recovery of lands against any person claiming under or by virtue of a judicial or tax sale, saving for five years thereafter the rights of persons then having such rights of action, is repealed by the seventh section of title 2 of the Code. And the repeal applies as well to rights of action existing under the act of 1849 at the time the Code took effect, as to those to accrue after the Code went into operation, provided a right of action had accrued before the passage of the act of 1849, under the statute at that time in force, and was not barred by the statute under which the right first accrued.

6. The words, "statutes now in force," contained in the sixth section of the Code, as ap-

plied to a case where the cause of action had accrued prior to the passage of the act of 1849, and which also falls within the terms of the second section of the act last mentioned, are construed to apply only to the statute under which the right of action originally accrued.

This was an action at law by Felix P. Pruseux and others, against Simeon W. Welch, Henry Phillips, and Benjamin F. Doler. There was a verdict for defendants in ejectment, and motion was now made for a new trial.

Disney & Ranney, for plaintiffs.
Hurd & Delano, for defendants.

WILLSON, District Judge.    This is an action of ejectment, brought by the heirs and legal representatives of Anthony Felix Waibert, who was a resident of the island of Cuba, from 1807 to the 25th of April, 1813, at which time he died. The land of which possession is sought to be recovered consists of 430 acres, situate in tract 6, township 7, in the 14th range of townships in the county of Knox. The suit was tried by a jury, at the last July term of this court; and by the direction of Mr. Justice McLean, who presided at the trial, a verdict was returned for the defendants, and a motion for a new trial filed, in order to determine the questions of law which are involved in the case. There is no dispute about the validity of Waibert's title, which was acquired by deed on the 10th of April, 1800. Nor is there any controversy in relation to the heirship of the plaintiff's lessors.

It appeared on the trial that Anthony Felix Waibert died on the 25th of April, 1813, leaving, as sole heir, his son Felix Anthony Waibert, who was born in 1810, and who, without ever leaving Cuba, died July 25, 1850. Lorenza Antonia Pruseux, his half-sister, inherited the Waibert estate. She also lived in Cuba, without ever coming to the United States, and died on the first of December, 1852, leaving the plaintiff's lessors her only children and heirs at law.

The land in question is divided by a county road, running east and west. One parcel, of 189 acres, lies north of this road, and the remaining 241 acres south of it. The first parcel was sold for delinquent taxes in December, 1826, and 1828; and on the 4th of July, 1849, the auditor of Knox county executed and delivered a deed for 140 acres of it to Henry Keller, upon the certificate of tax sale; George King then holding a certificate of purchase at tax sale, for the residue, or 49 acres. Keller and King respectively took possession of the 140 and 49 acres on the second day of October, 1829. On the 30th of December, 1830, the 241 acres south of said road was sold for delinquent taxes, for which the auditor executed and delivered a deed to Sprague & Bevins, bearing date July 19, 1839, possession of it having been previously taken by the purchasers at tax sale. It farther appeared upon the trial that on the 26th of October, 1835, Hall & Warden,

of Mount Vernon, pretending to have purchased this land of Anthony Felix Waibert, obtained, for a consideration, a transfer to themselves of all the right, title and interest from the purchasers and occupants (held by them) under the tax sales. That in obtaining such transfers they fraudulently exhibited a forged deed from Anthony Felix Waibert to themselves, for the conveyance of the entire 430 acres, which deed bore date April 1st, 1835, and purported to have been executed 22 years after the grantor was in fact dead. The moiety of title thus acquired by Jonathan C. Hall was conveyed to John W. Warden by Hall & wife, who executed for that purpose two quit-claim deeds, bearing date respectively April 15, 1837, and October 25, 1839.

John W. Warden soon after died testate. His will was admitted to probate on the 4th of November, 1842, and letters testamentary granted to Alexander Elliott and Samuel P. Warden, executors designated and empowered by the testator, in his will, to sell and dispose of the land in question, by deed or otherwise. The executors accordingly sold the land in parcels to different persons, and executed deeds therefor. It is from this source, and through this channel, that the defendants claim title, and as tenants in possession under it defend in this suit. The ground of defence against the plaintiff's right of recovery is that the defendants severally hold possession under claim and color of tax title; and that, therefore, the plaintiff's right of action is barred by the statutes of limitation of Ohio. A right of action accrued to Felix Anthony Waibert, (the heir at law of Col. Waibert), for the possession of the 189 acres, lying north of the county road, on the second day of October, 1829, that being the time when Keller and King took adverse possession of that portion of the tract. A like right of action accrued to the same party for the 241 acres, sought of said road, in 1839, when Dunham took adverse possession of it, and erected a house and made other improvements upon the land.

The statute of limitations in force at the time adverse possession was taken of the 189 acres north of the road, was the act of 25th February, 1824. The first section of that law limited the time of bringing suits in ejectment to twenty-one years. The second section provided: "That if any person, who shall be entitled to have or commence any suit in ejectment for the recovery of the title or possession of lands, tenements or hereditaments, shall be within the age of twenty-one years, insane, feme covert, imprisoned, or without the United States and territories thereof, at the time such cause of action shall have accrued, every such person shall have a right to commence any such action within the time hereinbefore limited, after disability shall be removed." Chase's St. 1402. This disability to non-residents of

the United States, which had accrued to parties under the law of 1824, was preserved and continued by the acts of 22nd February, 1830 (Chase's St. 1654), and of 18th February, 1831 (Id. 1768). And it was not until the passage of the act of February 28, 1846, that such disability was sought to be made inoperative. The statute of 1846 is entitled "An act to amend the law for the limitation of actions." It declares: "That so much of any act for the limitation of actions heretofore passed and now in force as saves from the operation thereof the rights of any person entitled to have or maintain any action of ejectment for the recovery of any title or possession of lands, tenements or hereditaments, on account of such person being non-resident of this state or beyond seas, be, and the same is hereby repealed: provided, that as to causes of action which have already accrued, this act shall not take effect till the 4th day of July, 1847."

The counsel for the plaintiffs have suggested a query as to the import and true meaning of the words "beyond seas," as used in this repealing law. They insist that the repealing act does not affect the plaintiff's right of action, because the saving of the statute of 1824, is not comprehended in its terms. It repeals so much of any act as saves the rights of non-residents and persons beyond seas. It is contended that these terms designate a particular class of persons, spoken of in statutes prior to 1824, and that a person who is a "non-resident," or "beyond seas," is not necessarily a person "without the United States and territories thereof." The words "beyond seas," when first incorporated into a statute of limitations, had their origin in the act of parliament of 21 Jac. I. of England. They received a judicial interpretation by the English courts, and were declared to mean "beyond or out of the realm." Our state legislatures have, incautiously, borrowed the phrase. It has, however, been construed and declared by the American courts to mean "without the limits of the state." Faw v. Roberdeau's Ex'r, 3 Cranch [7 U. S.] 174; Evans v. Eaton, 3 Wheat. [16 U. S.] 475; Nicholas v. Anderson, 8 Wheat. [21 U. S.] 366; 6 Ohio, 98; 7 Ohio, 153. We must confess our inability to perceive the distinction sought to be made of absentees from the state, between those within and those without the United States and territories thereof. They are persons "without the limits of the state" as much in the one case as in the other. To us it seems to be a distinction without a difference, both in principle and in its practical effects. The phrase, "beyond seas," is one of comprehensive meaning, and, as used in the statutes, relates to persons who are not residents of the state of Ohio. It is further objected that the repealing act of 1846 is retroactive in its effects, and therefore inoperative and void.

The rule of law, which applies, in giving effect to a repealing statute, was well stated by Chief Justice Tindal, in Key v. Goodwin, 4 Moore & P. 341. "The effect of a repealing statute," (says the learned judge,) "is to obliterate the statute repealed as completely from the records of parliament as if it had never been passed, and that it must be considered as a law that never existed, except for the purpose of those actions or suits which were commenced, prosecuted and concluded while it was an existing law." So, in the case of Butler v. Palmer, 1 Hill, 324, when the legislature of New York passed a law in May, 1837, authorizing mortgage debtors to redeem their mortgaged property sold under decrees of foreclosure within one year from the date of the sale. In April, 1838, an act was passed repealing the act of 1837, to take effect in November, 1838. In that case, where the sale took place in December, 1837, before the repealing law had passed, it was held that no redemption could take place after the time fixed for the act to go into effect; that the right of redemption was a mere inchoate right, and was necessarily destroyed by the abrogation of the statute which conferred it.

In all cases where by law an immunity is granted, or a disability is created, and when no vested rights accrue under it, the legislature has unquestioned power and authority to repeal or otherwise abrogate such law. Again: It was forcibly urged by the plaintiff's counsel upon the trial, that there could be no adverse possession while the premises remained under the control of Hall & Warden, or Warden's heirs or executors, down to the time of the sale by Warden's executors to James Rogers, in March, 1854. And this objection was put upon the ground that their possession was obtained and perpetuated by a fraudulent ouster of the tenants in possession under the tax title. The legal maxim that "a person shall not take advantage of his own wrong" is just and correct in all cases where it properly applies. But the question is, can this principle apply here to the prejudice of the present occupants of the land, who claim to be bona fide purchasers, without notice, and to hold possession under color of title traced to the tax sale? The transaction of procuring the tax title by Hall & Warden was undoubtedly attended with those fraudulent representations that would justify a court of chancery in declaring the transfer voidable, at the instance of the party injured by it as between the parties themselves. It is only the person injured by a dishonest bargain that has the right to complain of it, for it would be productive of the most evil consequences to hold that a title to land could be vitiated and destroyed in the hands of a bona fide purchaser, without notice, in consequence of the dishonesty practiced in a bargain, by some previous owner, through whom the purchaser claims title. Felix Anthony Waibert could in no way be affected by this fraudulent transaction. His rights remained unchanged, and could not, by any possibility, be-

prejudiced by the fraud. The transition of the tax title from honest to dishonest men interposed no obstacle against the enforcement of any right which Waibert possessed, and the title, in its transmission to bona fide purchasers, through such a medium, would not necessarily become so tainted as to vitiate it in their hands.

Hence the material question in this branch of the case is one of fact, to wit: Did Hall & Warden, and those holding under them, claim and possess the land under the tax title as against the real owner, who was delinquent in the payment of taxes; and was that claim and possession open, notorious, bona fide, and continuous? These are questions of fact, to be determined by a jury upon testimony; and if the jury, from the evidence, finds affirmatively upon them, then, under the rules of law governing this branch of the case, the plaintiffs have no right of action to recover possession of the 189 acres of land situate north of the county road, since the plaintiff's ancestor failed to prosecute his suit before, or within, the fifteen months limited by the act of 1846. ·

It remains for us to consider and apply the principles of law which are incident to the rights of the parties claiming ownership in the 241 acres lying south of the county road. We do not understand that anything is seriously claimed from the possession taken by Robert Maxwell of the west end of the tract, in the fall of 1833. The evidence upon the trial clearly showed an abandonment of the occupation of the premises in the spring of 1836, and that the land remained unoccupied till July 22nd, 1839, at which time the auditor of Knox county executed and delivered a deed for the conveyance of the 241 acres to Sprague & Bevins, upon certificates of purchase at tax sale. Under this title Dunham took possession of the tract, and built his cabin in the fall of 1839. Hence the right of action accrued to the ancestor of the plaintiff's lessors, in the year 1839; and this brought him under the operation of the act of limitation of February 18th, 1831 (Chase's St. 1768).

The first section of this law provides that "actions of ejectment for the recovery of the title, or possession of lands, tenements or hereditaments, shall be commenced within twenty-one years after the cause of such action shall have accrued, and not after." The action in this case was commenced on the 20th of October, 1857. So that, in the absence of subsequent legislation, the plaintiff's right of recovery, as to the 241 acres, would be unquestioned.

On the 22nd of March, 1849, the legislature of Ohio passed an act entitled "An act to give additional security to land titles in this State" (47 St. 53). The second section of this law declares: "That no action of ejectment or other action for the recovery of lands or tenements, shall be brought against any person claiming under or by virtue of any judi-

cial sale, or any sale of forfeited or other lands for taxes, except within seven years after open and notorious possession taken and continued by the defendant, or the person or persons under whom he may claim. But all persons whose right of action shall or may have accrued before the passage of this act, shall be at liberty to bring their actions at any time within five years after the passage of this act, although the term of seven years hereinbefore limited may have previously expired." By the 7th section of title 2 of the Ohio Code (Swan's St. 626), the act of limitations of February 18, 1831, and the second section of the "Act to give additional security to land titles," of 22nd March, 1849, were repealed. The 9th section of this law declares that "an action for the recovery of the title or possession of lands, tenements or hereditaments, can only be brought within twenty-one years after such cause of action shall have accrued." And the 6th section provides that title 2 of the Code shall not apply to actions then commenced, or where the right of action has already accrued, but that the statutes then in force shall be applicable to such cases, according to the subject of the action. The act to establish the Ohio Code of Civil Procedure was passed March 11, 1853, and took effect July 1st of the same year.

Now, the question arises, upon this condition of the legislation of this state, whether the plaintiffs were brought under the operation of the law of 1849, so far as to cut off their right of action in this suit. In cases depending on the statutes of a state, the federal courts adopt the construction of the state courts, when that construction is settled or can be ascertained; and such decisions of the state courts are to be regarded as binding here, unless they come in contact with the constitution, laws and treaties of the United · States. In Hazlet v. Critchfield, 7 Ohio 153, Judge Hitchcock, in delivering the opinion of the court, used this language: "From a careful examination of all the legislation of the state upon the limitation of actions, we are led to the conclusion that the laws are so framed that all actions and causes of action must be governed by the limitation law in force at the time the cause of action accrued." This was in confirmation of the doctrine previously maintained by the supreme court of Ohio in the case of Bigelow's Ex'r v. Bigelow's Adm'r, 6 Ohio, 96, where it was held that causes of action accruing under the repealed acts, if barred by those laws while in force, continue barred by them; and if not barred during the existence of those laws, shall, nevertheless, be limited by them. Applying these rules of construction to the laws of limitation of the state, we can see no obstacle to the plaintiff's right of recovery for the 241 acres. Before the expiration of the five years limited in the act of 1849 for the prosecution of the plaintiff's suit, that law was repealed. Thereafter, except to persons

who had acquired rights under it, that law had no more force or effect than if it had never existed. That the legislature did not intend, by the act of 1853, to continue in force the provisions of the 2nd section of the law of 1849, in this regard, is clear from the language contained in the 9th section, which declares, that an action may be maintained for the recovery of the possession of lands, if suit is brought within twenty-one years after such cause of action shall have accrued. By the repeal of the law of 1849 the plaintiffs were thrown back upon the act of 1831. That was the law in force at the time their right of action accrued.

We are clear in the opinion that the language of the 6th section of the Code, which declares that in cases where a right of action had already accrued, the statutes then in force should be applicable to such cases, relates to statutes under which the right of action did in fact accrue. The repealing of the act of 1831, by the law of 1853, affirms the validity of the former law up to the time of the repeal, and is, we believe, conclusive, that the saving clause of the 6th section has reference as well to the causes of action which accrued under the act of 1831 as to those which accrued under the law of 1849. Had the five years elapsed after the enactment of the law of 1849, and before its repeal, the plaintiff's right of action would, undoubtedly, have been barred; for in that event the inchoate right of the defendants, acquired by virtue of the purchase at the tax sale, would have become an absolute vested right, and could not be impaired by subsequent legislation. So, if the right of action had accrued to the plaintiffs under the law of 1849, the terms of that law would have governed the action by reason of the express provisions of the repealing statute of 1853.

This interpretation of the statute of 1853 we believe to be a true exposition of the intention of the legislature. It is the duty of the courts to execute the legislative will, when ascertained, without any regard to their own views as to the wisdom or justice of the particular enactment; and the means of ascertaining that legislative intention are to be found in the statute itself taken as a whole and with all its parts; also in connection with antecedent legislation upon the same subject, and the judicial construction given to such legislation by the state courts. The interpretation which we have given to the 6th section of the Code seems to us to be in accordance with the established policy of the state from its early history. It is sanctioned by the true intent of the various acts of the general assembly in regard to the limitation of actions, and is fully authorized by the decisions of the supreme court of the state.

Entertaining this opinion of the law of the case, the motion for a new trial must be granted, the costs to abide the event of the suit.